**Susan D. Pitchford, OSB No. 980811**
E-mail: sdp@chernofflaw.com
CHERNOFF VILHAUER LLP
601 SW Second Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 227-5631
Facsimile: (503) 228-4373

**Rudolph A. Telscher, Jr., *Pro Hac Vice***
Email: rtelscher@hdp.com
**Kara R. Fussner, *Pro Hac Vice***
Email: kfussner@hdp.com
**Greg W. Meyer, *Pro Hac Vice***
Email: gmeyer@hdp.com
HARNESS, DICKEY & PIERCE, P.LC.
7700 Bonhomme Ave., Suite 400
St. Louis, MO 63105
Telephone: (314) 726-7500
Facsimile: (314) 726-7501

Attorneys for Plaintiff/Counterclaim Defendant,
CYBER ACOUSTICS, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

CYBER ACOUSTICS, LLC,

Plaintiff/
Counterclaim Defendant,

v.

BELKIN INTERNATIONAL, INC.,

Defendant/
Counterclaim Plaintiff.

Civil Case No.:3:13-cv-01144-SI

**CYBER ACOUSTICS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INEQUITABLE CONDUCT ASSERTIONS IN BELKIN'S FIRST AMENDED ANSWER AND AMENDED COUNTERCLAIMS**

**PLAINTIFF CYBER ACOUSTICS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE INEQUITABLE CONDUCT ASSERTIONS IN BELKIN'S FIRST AMENDED ANSWER AND AMENDED COUNTERCLAIMS**

In support of its Motion to Dismiss the Inequitable Conduct Assertions in Belkin's First Amended Answer and Amended Counterclaims (Dkt No. 23) pursuant to Fed. R. Civ. P. 9(b), 12(b)(6) and 12(f), Plaintiff Cyber Acoustics, LLC ("Cyber") states as follows:

## INTRODUCTION

Cyber invented a unique iPad portfolio cover that provides far greater protection for an iPad than previous products on the market. The Patent Office granted Cyber U.S. Patent No. 8,291,924 ("the '924 patent") to protect its invention. In connection with this lawsuit, Cyber realized that it had incorrectly identified the inventors of its patent. This is a common mistake and the regulations allow for its correction. Cyber has petitioned the Patent Office, under applicable regulation, to correct the mistake and Cyber has no doubt that the Patent Office will grant its request in due course. Cyber also filed a new complaint in this district identifying the issue and to ensure that the original complaint did not deprive this court of jurisdiction over the lawsuit. The procedural issues related to those events have been resolved between the parties and the case is proceeding here.

Through the above-described litigation events, Belkin learned of Cyber's mistake pertaining to inventorship and now contends, without any additional supporting facts, that Cyber committed "inequitable conduct" when it initially mis-identified inventors at the Patent Office. *See* Belkin's First Amended Answer and Amended Counterclaims, Third Defense and Third Counterclaim (Dkt No. 23).[1] Inequitable conduct is a disfavored defense in patent law that

---

[1] Belkin first raised these allegations in its Answer and Counterclaims (Dkt 18). Following consultation between counsel, Belkin conceded that the allegations, as originally pled, were deficient and proposed Amended Counterclaims, which Cyber reviewed and concluded were insufficient to cure the deficiencies. This Court granted Cyber's request for a conference to determine the best procedural course forward and directed Belkin to file the Amended Counterclaims, with leave to Cyber to move to dismiss within one week.

amounts to an assertion that the patentee committed fraud and ***intentionally deceived*** the Patent Office during prosecution of the patent-in-suit. The Federal Circuit has taken note that claims of inequitable conduct (also called "fraud on the Patent Office") are advanced far too often without substantial support. These claims drive up litigation costs and distract from the true issues in the case. In 2009, the Federal Circuit reiterated the significant limits on these types of allegations at the pleading stage and the requirement that accused infringers (like Belkin) must plead inequitable conduct with particularity under Rule 9(b). This requires the pleading of ***facts*** from which it would be ***reasonable to infer*** that the patentee misrepresented information to the Patent Office with a ***specific intent to deceive*** the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

Here, Belkin contends the patent-in-suit, U.S. Patent No. 8,281,924 ("the '924 patent"), is unenforceable because "on information and belief" Mr. Westrup (the originally named inventor), allegedly with "deceptive intent," stated that he was the inventor when he, in fact, was not. Significantly, "deceptive intent" is averred by Belkin only generally "on information and belief." The only facts Belkin alleges are those relating to the procedural developments in this lawsuit and in the Patent Office. Namely, Belkin avers that Cyber filed the instant lawsuit, and dismissed the initial lawsuit, after recognizing an error in inventorship, and further avers that Mr. Westrup (the originally named inventor) signed a declaration and assignment to Cyber which indicated he was the inventor, when he was not, and that Cyber later filed a Petition to Correct Inventorship in which it sought to change inventorship from Mr. Westrup to three other individuals named Steven Murphy, Kwong Chi Kei, and Lui Suen Yen.

Missing from the pleading are any facts from which it is reasonable to conclude that Cyber misrepresented facts to the PTO ***with a specific intent to deceive*** the PTO. To the

contrary, Cyber's voluntary correction of inventorship, suggests just the opposite – that Cyber and the individuals involved in prosecution of the '924 patent had no motivation to name the wrong inventors, that Cyber has always held all rights and title in the patent-in-suit, and that Cyber promptly took action to correct inventorship with the names of the correct employee-inventors when the error came to its attention. Cyber is at a complete loss as to what it would have to gain by misrepresenting the inventors to the Patent Office. Indeed, Cyber uncovered the mistake on its own and sought to correct the mistake on its own. After consultation with Belkin to date, Belkin has not articulated (nor has it alleged) any plausible motive for Cyber to commit fraud in this manner.

Belkin fails to meet the pleading requirements, and therefore Belkin's Third Counterclaim and Third Affirmative Defense should be dismissed and stricken, respectively.

## FACTUAL BACKGROUND

Belkin's First Amended Answer and Amended Counterclaims allege nothing more than the procedural events surrounding Cyber's voluntary correction of inventorship and re-filing of this lawsuit. These facts, alleged in the pleadings and taken from the publicly available record before this Court and the Patent Office,[2] are as follows:

- On February 11, 2013, Cyber sued Belkin for patent infringement of the '924 Patent in this Court in Case no. 3:13-cv-00243-SI. *See* Belkin's CC ¶ 12 and Dkt. 1 in Case no. 3:13-cv-00243-SI.
- On July 9, 2013 Cyber filed a Petition to Correct Inventorship in the Patent Office. *See* Compl. ¶ 10; Belkin Answer ¶ 10 and Belkin CC ¶ 32. The Petition to Correct

[2] Although courts should normally limit their inquiry to the facts stated in the complaint and the documents attached thereto, courts may consider the contents of relevant publicly available documents in ruling on a Fed. R. Civ. P. 12(b)(6) motion. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–1018 (5th Cir. 1996) (finding that in a motion to dismiss fraud allegations, "a court may consider the contents of relevant public disclosure documents."); *Little Gem Life Sci. LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (noting that a court "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings") (internal citations omitted).

Inventorship along with the supporting documents filed in the Patent Office is attached as Exhibit C to Cyber's Complaint in this action (Dkt. 1).

- The Petition, attached to the Complaint and filed with the PTO, requests correction of inventorship from originally named inventor Joseph Westrup to corrected inventors Steven Murphy, Kwong Chi Kei, and Lui Suen Yen, all of whom work, directly or indirectly, for Cyber. Complt Ex. C; Belkin CC¶ 32.

- Submitted along with the Petition were, *inter alia*, (1) a statement from the corrected inventors that the error in inventorship occurred without deceptive intent, (2) an assignment from the corrected inventors to Cyber, (3) a statement from Cyber agreeing to the requested correction, and (4) a statement by Mr. Westrup that he has no disagreement with the Petition to Correct Inventorship. Complt Ex. C.[3]

- Immediately after filing the Petition to Correct Inventorship, Cyber notified Belkin and filed the instant action. Belkin's CC ¶ 13 and Dkt 1.

- On July 31, 2013, Cyber and Belkin stipulated to dismissal of the first action and have proceeded with discovery in this action. Belkin's CC ¶ 12 and Dkt 29.

The only additional facts alleged in Belkin's First Amended Answer and Amended Counterclaims pertain to two required documents filed in the Patent Office near the start of the patent application process. Namely, Belkin notes that on August 23, 2010 Mr. Westrup signed a written assignment declaring that he was the inventor and assigning his entire interest to Cyber, and that on this same date he also signed a "Declaration and Power of Attorney" similarly declaring himself to be the "original, first and sole inventor" of the subject matter. Belkin Third Defense ¶¶ 10 and 11; Belkin CC ¶¶ 29 and 30. Based on Cyber's voluntary correction of inventorship, Belkin avers that these statements were false and then "on information and belief" avers that "Westrup's statement was made with deceptive intent, as it is implausible for Westrup to have believed himself to be the 'sole inventor' of subject matter that he did not invent at all." Belkin Third Defense ¶ 11; Belkin CC ¶ 30.

[3] Belkin's First Amended Answer and Amended Counterclaims never mentions these documents, though they were included with Exhibit C to the Complaint, and were filed with the Patent Office and publicly available.

Absent from the Amended Counterclaims are any facts relating to *why* Mr. Westrup or Belkin wrongly stated inventorship or that would otherwise evidence motivation or intent to deceive the Patent Office. As shown below, pleading on "information and belief", without more, is insufficient to state the fraud claims set forth in Belkin's Third Counterclaim and Third Affirmative Defense, and the Counterclaim should be dismissed and the Defense stricken.

## ARGUMENT

### I. Applicable Legal Principles

#### A. The Pleading Standard under the Supreme Court's *Twombly* / *Iqbal* Jurisprudence.

A counterclaim, like any other pleaded claim, "must contain sufficient factual matter … to state a claim that is plausible on its face … and give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Johnson Outdoors Inc. v. Navico, Inc.*, 774 F. Supp. 2d 1191, 1195-96 (M.D. Ala. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007)). A counterclaim's factual allegations "must be enough to raise a right to relief above the speculative level" before the counterclaim may become a part of the case. *See Twombly*, 550 U.S. at 555. As the U.S. Supreme Court has recently made clear, this requires a counterclaim to allege more than just "labels and conclusions," "[t]hreadbare recitals of the elements of a cause of action," and "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

An affirmative defense is likewise subject to the *Iqbal-Twombly* pleading standard and should not be added to a pleading if it fails to provide the requisite fair notice of what the defense is and the legal and factual grounds upon which it rests. *See* Fed. R. Civ. P. 12(f). By denying the entry of an insufficient defense, the Court is able to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Uni-Marts, LLC v. NRC*

*Realty Advisors, LLC*, No. 09-164-JJF, 2010 WL 1189769, at *2 (D. Del. Mar. 26, 2010) (citation omitted).

**B. The Federal Circuit Requires that Inequitable Conduct be Pled with a High Degree of Particularity.**

Even stricter rules apply when a party wishes to assert inequitable conduct in a patent case. A claim of inequitable conduct requires a party to demonstrate "by clear and convincing evidence that the applicant '(1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) did so with intent to deceive the [Patent Office].'" *Cancer Research Tech. Ltd. v. Barr Labs, Inc.*, 625 F.3d 724, 731 (Fed. Cir. 2010). Although the denial of a motion to amend under Fed. R. Civ. P. 15(a) is a procedural matter governed by regional circuit law, "whether inequitable conduct has been adequately pleaded is a question of Federal Circuit law." *Exergen*, 575 F.3d at 1318 (noting that inequitable conduct "pertains to or is unique to patent law.")

The Federal Circuit has repeatedly indicated that inequitable conduct defenses are disfavored. *Burlington*, 849 F.2d at 1422 (declaring that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague."); *see also Mollins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995) ("[U]njustified accusations of inequitable conduct are offensive and unprofessional. They have been called a 'plague' on the patent system."); *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (*en banc*). (Inequitable conduct "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system. . . . Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system. Because allegations of inequitable conduct are routinely brought on 'the slenderest grounds.'").

To combat this "plague," the Federal Circuit has stated that inequitable conduct claims must meet the heightened pleading standard under Rule 9(b). *Exergen*, 575 F.3d at 1327 ("[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when and how of the material misrepresentation or omission committed before the PTO."). Accordingly, the Federal Circuit held that claims of inequitable conduct require a pleading "setting forth the particularized factual bases for the allegation." *Id*. at 1327.

Accordingly, under *Exergen*, a sufficient inequitable conduct pleading must identify the "who, what, where, why and how" of the fraud. *Id.* at 1327. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of ***underlying facts*** from which a court may ***reasonably infer*** that a specific individual (1) ***knew*** of the withheld material information or ***of the falsity of the material misrepresentation,*** and (2) withheld or ***misrepresented this information with a specific intent to deceive the PTO***." *Id.* at 1328–29 (emphasis added). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5. An allegation of deceptive intent may *not* be solely pled on "information and belief." *Id.* at 1330.

As described in detail below, Belkin has failed to meet the strict pleading standards of *Exergen*.

### C. The Federal Circuit has Established a Very High Bar for Success of Inequitable Conduct Claims

Following *Exergen*, the Federal Circuit again revisited the inequitable conduct doctrine and specifically addressed the intent required to prevail on a claim. *Therasense Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (*en banc*). In *Therasense*, the *en banc* Federal Circuit also addressed the "expansion and overuse of the inequitable conduct doctrine."

*Id.* at *4. The Court noted that the rare cases establishing the inequitable conduct doctrine involved "deliberately planned and carefully executed scheme[s] to defraud not only the PTO but also the courts." *Id.* at 1287 (citations removed). Given this high standard, as discussed below, Belkin's affirmative defense and counterclaim are insufficiently pled—there are no facts pled from which one could reasonably infer deceptive intent.

More specifically to the *Therasense* case, the Federal Circuit found that, to prevail on an inequitable conduct claim, "the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* at 1287. The accused infringer must prove each element—intent and materiality—by clear and convincing evidence. *Id.* To meet the clear and convincing standard, the Federal Circuit held that the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id*. at 1290.

As will be shown below, the above standards from *Therasense* and *Exergen* indicate Belkin's counterclaim and affirmative defense allegations pertaining to inequitable conduct are insufficiently pled and must be dismissed.

## II. Under Applicable Principles Belkin's Inequitable Conduct Allegations are Insufficiently Pled and Must be Dismissed.

In its Amended Counterclaims, Belkin alleges that Mr. Westrup's statement that he was the inventor was false, and that "on information and belief, Westrup's statement was made with deceptive intent. . . ." *See* Belkin Third Defense ¶ 11 and CC ¶ 30. This constitutes a summary averment of "deceptive intent" that is insufficient as a matter of law. *See Exergen at 1330* (rejecting summary averments on "information and belief.")

Missing entirely from the pleading is any averment that Mr. Westrup or anyone else (a) understood the legal definition of inventorship and appreciated that the named inventor was

erroneous at the time the statement was made and (b) specifically intended to deceive the patent office. Cyber is at a loss regarding what it would have to gain by intentionally misnaming the inventors. This situation stands in contrast to a more common inequitable conduct claim in which the patent owner is accused of intentionally withholding relevant prior art. In the latter situation, an inference is logical that the owner withheld the relevant prior art to get a patent to which they otherwise could not have obtained if they had disclosed the art. Even in that scenario, the Federal Circuit has held that particularized pleadings of facts indicating deceptive intent are required.

For example, in *Thersense* the alleged inequitable conduct involved failure to disclose prior art references. Even in that context (where a motivation to deceive is more logical), the Federal Circuit held that, "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the [Patent Office] **does not prove specific intent to deceive**." *Id.* at *10 (*citing Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct")) (emphasis added). Rather, "to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence'" *Id.* at 1290 (citations removed). Moreover, the Federal Circuit recognized that the "absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Id.* at 1291.

At the pleading stage, the claim must, at a minimum, allege *facts* that would support a claim of fraud and deceptive intent. *See, e.g., Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc.*, 2013 WL 3216145 at *4-*9 (D. N.J. 2013)(dismissing counterclaim and affirmative

defense where accused infringer failed to plead facts supporting a reasonable inference of intent to deceive the Patent Office). Here, Belkin has alleged no facts from which one could infer knowledge or intent to deceive the Patent Office; the two elements of inequitable conduct which Belkin must ultimately prove in order to prevail on its counterclaim and affirmative defense.

The general averment that it was "implausible" for Mr. Westrup to have believed himself to be the inventor, is not a factual averment, but rather a statement "on information and belief" and, in any event, nothing more than rank speculation. Under Belkin's logic, no one could ever be wrongly identified as the sole inventor of a patent, or sign the standard forms which accompany every patent application. This is not the law. Under 35 U.S.C. § 256, a patent is *not* invalid for either erroneously omitting or naming persons as inventors and, instead, may be corrected upon application to the Patent Office (an application which Cyber has submitted) or on order of Court.

Further, and while Belkin summarily contends that the erroneous inventorship listing was made with "deceptive intent" no facts beyond those relating to the procedural events of application and correction of inventorship are alleged. Indeed, other than critiquing Cyber's counsels' choice of the word "add" in reference to the petition to correct inventorship "add[ing]" three omitted inventors,[4] Belkin does not even address the petition or the declarations filed with the petition, all of which speak to the *lack* of deceptive intent. Belkin not only does not contradict these documents, Belkin avers that it is "without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein. . . ." Belkin Ans. ¶ 10.

---

[4] Belkin avers that in its complaint Cyber "misrepresents" the nature of the Petition to Correct Inventorship by using the word "add" in reference to the Petition adding three omitted inventors. Yet, Cyber attached the entirety of the Petition, including the documents filed with the Petition, to its complaint and never misrepresented anything about the petition, which does, in fact, seek to change inventorship from Mr. Westrup and to add three new persons as inventors.

As the Petition to Correct Inventorship indicates, there was an error in inventorship, but that error was made without deceptive intent. *See* Exhibit C. All involved parties agreed with the Petition to Correct and each named inventor (both the original named inventor and the corrected inventors) assigned all right and title to the patent, including their rights to past damages, to Cyber, the company for which each works, directly or indirectly. Hence, Cyber owned all right and title to the '924 patent at all times and would have no motivation to falsify inventorship or cause others to falsify inventorship. Nor is any motivation for any of the listed inventors alleged, financial or otherwise. If anything, the circumstances lead to an inference of mistake, and *not* intent to deceive, as there are no facts indicating any motivation to incorrectly state inventorship in the application. Absent these factual allegations, the pleading is deficient as a matter of law and the counterclaim must be dismissed and the defense stricken.

For these reasons, Cyber requests the Court: (1) strike Belkin's Third Affirmative Defense entitled "Unenforceability"; and (2) dismiss Belkin's "Third Counterclaim" entitled "Declaratory Judgment of Invalidity and Unenforceability of the '924 Patent" in Belkin's First Amended Answer and Amended Counterclaims (Dkt. 23).

Dated: September 19, 2013

/s/ Susan D. Pitchford

**Susan D. Pitchford, OSB No. 980811**
CHERNOFF VILHAUER LLP
601 SW Second Avenue, Suite 1600
Portland, Oregon 97204
Telephone: (503) 227-5631
Facsimile: (503) 228-4373
Email: sdp@chernofflaw.com

***Of Attorneys for Plaintiff/Counterclaim Defendant Cyber Acoustics, LLC***