IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYBER ACOUSTICS, LLC,

         Plaintiff,

    v.

BELKIN INTERNATIONAL, INC.,

         Defendant.

Case No. 3:13-cv-01144-SI

**OPINION AND ORDER**

Greg Meyer, Kara R. Fussner, and Rudolph A. Telscher, Jr., Dickey & Pierce, P.L.C., 7700 Bonhomme, Suite 400, St. Louis, MO 63105; Susan D. Pitchford, Chernoff Vilhauer McClung & Stenzel, LLP, 601 S.W. Second Avenue, Suite 1600, Portland, OR 97204. Attorneys for Plaintiff.

David D. Dalke, David P. Enzminger, and Jenna W. Logoluso, Winston & Strawn LLP, 333 S. Grand Avenue, 38th Floor, Los Angeles, CA 90071; Jon P. Stride, Tonkon Torp LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Suite 1600, Portland, OR 97204. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       This is an action by Plaintiff Cyber Acoustics, LLC ("Cyber") against Defendant Belkin International, Inc. ("Belkin") alleging infringement of U.S. Patent No. 8,281,924 ("the '924 Patent"). Dkt. 1. On September 13, 2013, Belkin filed its first amended answer and amended counterclaims, which included an affirmative defense and counterclaim alleging inequitable conduct in the prosecution of the '924 Patent. Dkt. 23. Cyber filed a motion to dismiss Belkin's

counterclaim alleging inequitable conduct and related affirmative defense. Dkt. 25. For the following reasons, Cyber's motion is DENIED.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). In addition, a complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Baca*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). All of these principles apply

with equal force both to a claim stated in a complaint and a counterclaim stated in a responsive pleading. *See Baca*, 652 F.3d at 1216.

An answer must "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Such defenses must be stated "in short and plain terms." Fed. R. Civ. P. 8(b). A court may strike an affirmative defense under Federal Rule of Procedure 12(f) if it presents an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (per curium) (citation omitted); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010). A Rule 12(f) motion will not "be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible to determine the issue by drawing inferences from acts and statements that are not disputed." C. Wright, A. Miller, *et al.*, 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.). An affirmative defense is legally insufficient only if it clearly lacks merit "under any set of facts the defendant might allege." *Polk v. Legal Recovery Law Offices*, 291 F.R.D. 485, 489 (S.D. Cal. 2013) (citation and internal quotation marks omitted).

## BACKGROUND

On October 9, 2012, the United States Patent and Trademark Office (the "PTO") issued the '924 Patent to Cyber with the sole inventor listed as Joseph Westrup ("Westrup"). Dkt. 1-1 at 1. The patent at issue is for a cover for a portable electronic device. *Id.* Westrup assigned his interest in the '924 Patent to Cyber. Dkt. 1-2 at 1. On February 11, 2013, Cyber sued Defendant Belkin in this court, alleging infringement of the '924 Patent (the "Original Action"). On July 9,

PAGE 3 – OPINION AND ORDER

2013, Cyber filed a Petition to Correct Inventorship with the PTO. Cyber requested that the PTO, pursuant to 35 U.S.C. § 256 and 37 C.F.R. § 1.324, issue a Certificate of Correction to correct inventorship from Westrup to Steven Murphy, Kwong Chi Kei, and Lui Suen Yen. Dkt. 1-3 at 1. In support of its Petition, Cyber provided: (1) statements from Murphy, Kwong, and Lui that "the inventorship error occurred without any deceptive intention on their part;" (2) a statement from Westrup "that he has no disagreement as to the requested correction;" and (3) an assignment from Murphy and Kwong to Cyber. Dkts. 1-3 at 1-8, 1-4 at 1-2. Cyber filed the instant lawsuit on July 9, 2013, after filing the Petition to Correct Inventorship. Dkt. 1. On July 31, 2013, Cyber and Belkin stipulated to the dismissal of the Original Action. Since then, they have proceeded with discovery in this later-filed lawsuit. After Cyber filed the pending motion to dismiss, the PTO granted Cyber's Petition to Correct Inventorship of the '924 Patent. Dkt. 32-1 at 2. On September 19, 2013, Belkin filed its First Amended Answer and Amended Counterclaims. Dkt. 23. In its answer, Belkin raised defenses to Cyber's claims and asserted several counterclaims against Cyber.

Relevant to the issues raised in the pending motion, Belkin asserts in its Third Affirmative Defense that the '924 Patent is unenforceable because "Westrup obtained the patent-in-suit only by deceiving the patent office regarding the identity of the inventors." Dkt. 23 at 7-9, ¶¶ 8-14. In addition, Belkin requests in its Third Counterclaim, which alleges facts that are substantially similar to Belkin's Third Affirmative Defense, declaratory judgment of unenforceability of the '924 Patent. *Id.* at 13-15, ¶¶ 25-34. Among other things, Belkin alleges that the '924 Patent is unenforceable "for failing [to] [*sic*] name the true inventor as set forth in 35 U.S.C. § 102(f)" and that Westrup's declaration that he was the "original, first, and sole inventor" to the PTO was "completely false." *Id.* at 13, ¶ 28. The thrust of Belkin's Third

Affirmative Defense and Third Counterclaim is that the '924 Patent is unenforceable because of Westrup's inequitable conduct during the initial prosecution of the '924 Patent.

On September 19, 2013, Cyber brought this motion pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(f) to dismiss Belkin's counterclaim alleging inequitable conduct and to strike Belkin's related affirmative defense. Dkt. 25.

## DISCUSSION

Cyber argues that Belkin fails in its Third Counterclaim to state a claim upon which relief can be granted because the allegations in support of Belkin's inequitable conduct counterclaim do not comply with Rule 9(b) as interpreted by the U.S. Court of Appeals for the Federal Circuit. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325-31 (Fed. Cir. 2009). Cyber also argues that Belkin's Third Affirmative Defense should be stricken under Rule 12(f) for failing to provide the requisite fair notice of what the defense is and the factual grounds upon which it rests. These arguments are without merit, and each is addressed in turn.

## A.  Motion to Dismiss

*Exergen Corp. v. Wal-Mart Stores, Inc.* establishes that a party must plead a claim alleging inequitable conduct with particularity and allege both an intent to deceive the PTO and that the false statement was material. 575 F.3d at 1328-29. Cyber argues that Belkin failed to plead: (1) its inequitable conduct counterclaim with particularity; and (2) facts sufficient to demonstrate that Westrup "specifically intended to deceive the patent office." Dkt. 31 at 5.

### 1.  Legal Standards in Pleading an Inequitable Conduct Claim

A claim for inequitable conduct is reviewed under Federal Rule of Civil Procedure 9(b). *Exergen*, 575 F.3d at 1327. Whether inequitable conduct has been pleaded adequately is a question of Federal Circuit law because it "pertains to or is unique to patent law." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356

(Fed. Cir. 2007). Inequitable conduct is an equitable defense to patent infringement that, if proven, bars enforcement of a patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). The remedy of inequitable conduct is considered "the 'atomic bomb' of patent law." *Id.* at 1288. Inequitable conduct focuses on the misdeeds of the individuals responsible for securing a patent. *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828-32 (Fed. Cir. 2010). Deceit and misdeeds by even a non-inventor during the prosecution of a patent is sufficient to "spoil[] the entire barrel" and leave the patent unenforceable. *Id.* at 828. The pleading requirements for an inequitable conduct claim can be separated into two distinct inquiries: (1) particularity; and (2) materiality and intent. *Exergen*, 575 F.3d at 1328-29.

First, in alleging fraud, Rule 9(b) requires that a party plead with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). Pleading with particularity under Rule 9(b) "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. To satisfy the "who" of an inequitable conduct claim, the pleading must name "the specific individuals associated with the filing or prosecution of the application issuing" as the patent. *Id.* at 1329. The "what and where" requirements necessitate that a pleading "identify which claims, and which limitations to those claims, the withheld references are relevant to, and where in those references the material information is found." *Id.* For the "why and how," the pleading must explain why "the withheld information is material and not cumulative" and how "an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329-30.

Second, to establish inequitable conduct a party must plead materiality and intent. A party may allege knowledge and intent generally, but

> [A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5 (citing *Greenstone v. Cambrex Corp.*, 975 F.2d 22, 26 (1st Cir. 1992)). Ultimately, a pleading must set "forth the specific facts upon which the belief is reasonably based." *Id.* at 1330. A court must independently examine the alleged evidence of materiality and of intent to deceive. *Therasense*, 649 F.3d at 1290. Even if a party succeeds in defending a motion to dismiss an inequitable conduct claim, to ultimately prevail, the party must prove by clear and convincing evidence both materiality and intent to deceive. *Id.* at 1290; *see also Exergen*, 575 F.3d at 1329 n.5.

## 2. Belkin Sufficiently Pleaded Inequitable Conduct with Particularity

In order to satisfy the particularity requirements of *Exergen*, Belkin must sufficiently allege the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d at 1327. Belkin alleges in its Third Counterclaim, in pertinent part, the following:

> 25.    Belkin re-alleges and incorporates by reference [its] [*sic*] Affirmative Defenses and paragraphs 1 through 12 of its Counterclaims, inclusive, as fully set forth herein.
>
> . . .
>
> 28.    Each of the asserted claims of the '924 Patent is unenforceable for failing to name the true inventor as set forth in 35 U.S.C. § 102(f). In a sworn declaration to the USPTO, Joseph Westrup declared himself to be the "original, first, and sole inventor" of the subject matter claimed in the '924 Patent. As forth below, Westrup's

statement was completely false, which is now acknowledged by Cyber Acoustics. In truth, Westrup was not even an inventor of the subject matter of the '924 Patent, let alone the "sole" inventor. . . . Cyber Acoustics itself admits that Westrup filed and participated in the prosecution of the patent based on a false claim of deceptive intent to claim subject matter conceived by others as his invention, as set forth below.

29.    On August 23, 2010, Westrup signed a written assignment declaring that he was "the sole inventor of an invention entitled, COVER FOR PORTABLE ELECTRONIC DEVICE" and purported to assign the entire interest in the invention to Plaintiff Cyber Acoustics. Westrup's written representation that he was the sole inventor was false. As Cyber Acoustics acknowledges, Westrup did not even contribute to the invention. On information and belief, Westrup's false statement can only have been made with deceptive intent and with knowledge that he was not the inventor.

30.    On August 23, 2010, Westrup executed a Declaration and Power of Attorney under penalty of perjury under the laws of the United States declaring himself to be the "original, first and sole inventor" of the subject matter of the '924 Patent. Westrup's sworn statement to the patent office was false. Westrup caused the false statement to be filed with the Patent Office. On information and belief, Westrup's statement was made with deceptive intent, as it is implausible for Westrup to have believed himself to be the "sole inventor" of subject matter that he did not invent at all.

. . .

32.    On July 9, 2013, Cyber Acoustics filed a Petition for a Certificate of Correction under 35 U.S.C. § 256, acknowledging that Westrup's claim of inventorship was false, and seeking to change inventorship from Westrup to Murphy, Kie and Yuen. However, pursuant to 35 U.S.C. § 256, correction of inventorship is only allowable in [a] case of error. Belkin is informed and believes, and based thereon alleges, that Westrup's false claim of inventorship was not error, nor is it plausible for an inventor to believe in error that he invented the subject matter of a patent, when he did not even contribute to the invention.

33.     Westrup's false claim of inventorship was a material misrepresentation, because the patent would not have issued but for Westrup's false claim of inventorship. If Westrup ha[d] [*sic*] truthfully informed the USPTO that he did not invent the subject matter of the patent, the patent could not have issued to him pursuant to 35 [U.S.C.] §§ 101 and 102(f), applicable to patents filed before March 16, 2013.

Dkt. 23 at 13-15, ¶¶ 25-33.

A patent applicant must provide evidence of inventorship and supporting disclosures before the PTO will issue a patent. *PerSeptive Biosystems, Inc. v. Pharmacia Biotech Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000) ("Examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship."). Inventorship is a question of law, and in order to qualify as an inventor, a person must contribute to the conception of at least one claim. *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303-04 (Fed. Cir. 2010). Where a party "fabricate[s] evidence to support [a] claim of inventorship," the Federal Circuit has held that the conduct in question may give rise to a claim of inequitable conduct and render the patent unenforceable. *Advanced Magnetic*, 607 F.3d at 830-32. A patent issued because of inequitable conduct is rendered unenforceable in its entirety under the "one bad apple" rule. *Id.* at 828. That rule provides that if either an inventor or a non-inventor deliberately misrepresented to the PTO that he or she invented the patent, that action renders the entire patent unenforceable. *Id.*

A party, upon finding a technical error in a patent, may under 35 U.S.C. § 256 petition the Director of the PTO or a court to correct the listed inventors. Section 256 of Title 35 provides:

(a) Correction.—Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

PAGE 9 – OPINION AND ORDER

> (b) Patent Valid if Error Corrected.—The error of omitting
> inventors or naming persons who are not inventors shall not
> invalidate the patent in which such error occurred if it can be
> corrected as provided in this section. The court before which such
> matter is called in question may order correction of the patent on
> notice and hearing of all parties concerned and the Director shall
> issue a certificate accordingly.

35 U.S.C. §§ 256.[1]

Cyber availed itself of 35 U.S.C. § 256(a) and petitioned the PTO directly for a

Certificate of Correction, which was granted on October 18, 2013. Dkt. 32-1. The streamlined

correction process under the Leahy-Smith America Invents Act ("AIA"), however, has no

bearing on any inquiry into the inequitable conduct claim pending before this Court. In fact,

although the AIA removed all inquiries into subjective issues of intent for the purpose of

correcting inventorship, these changes do not restrict judicial relief based on inequitable conduct.

*See* Armitage, *Understanding the America Invents Act and Its Implications for Patenting*, 40

AIPLA Q.J. at 125, 130-31.

Further, even under the pre-AIA Section 256 text, the Federal Circuit has held that the

legislative history of 35 U.S.C. §§ 116 and 256 "strongly suggest[] that Congress intended to

permit correction of inventorship, without regard to the conduct of the [originally] named

inventor, as long as there was no deceptive intention on the part of" the newly corrected inventor.

*Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997). Thus, a pre-AIA

---

[1] The parties dispute whether the revised text of 35 U.S.C. § 256 is applicable to Cyber's Petition to Correct Inventorship. Pursuant to the Leahy-Smith America Invents Act, the technical amendments made to Section 256 "take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to proceedings commenced on or after that effective date." Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 20(l), 125 Stat. 284, 333-35 (enacted Sept. 16, 2011). Because Cyber initiated its Petition to Correct Inventorship on July 9, 2013, which is after September 16, 2012, the revised text of Section 256 is applicable to the PTO's issued Certificate of Correction. *See* Robert A. Armitage, *Understanding the America Invents Act and Its Implications for Patenting*, 40 AIPLA Q.J. 1, 126 n.490, 133 (2012).

correction of inventorship by the PTO did not address potentially deceptive conduct on the part of an originally named inventor. Because the actions of non-inventors may invalidate a patent, *see Advanced Magnetic*, 607 F.3d at 828, the PTO's grant of Cyber's Petition to Correct Inventorship does not end this Court's inquiry into the question of inequitable conduct.

To allege sufficiently the first particularity requirement, Belkin must identify "who" committed the alleged inequitable conduct. Cyber does not contest the sufficiency of the pleading of this element. Belkin alleges that Westrup, despite having a duty of candor to the PTO, made a "written representation that he was the sole inventor" and that the representation "was false." Dkt. 23 at 9, ¶ 14. The Court finds that Belkin satisfied the "who" requirement by identifying a Cyber representative responsible for allegedly inequitable conduct: Westrup. *See Exergen*, 575 F.3d at 1329; *see also Delano Farms Co. v. Ca. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (holding that a party must recite "facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO").

As also conceded by Cyber, Belkin's pleadings satisfy the "what and where" requirements. *See Exergen*, 575 F.3d at 1329. The "what and where" requirements demand that a pleading "identify which claims, and which limitations to those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329. Belkin alleges that "Joseph Westrup declared himself to be the 'original, first, and sole inventor' of the subject matter claimed in the '924 Patent." Dkt. 23 at 13, ¶ 28. Later, Belkin alleges that Westrup represented that he had not contributed to the conception of a single claim in the '924 patent. *Id.* at ¶ 28; *see also Vanderbilt*, 601 F.3d at 1303-04. Belkin also sufficiently

alleges that the entire patent would not have issued but for Westrup's representation that he was the sole inventor. *Id.* at ¶ 33. Based on these pleadings, the Court finds that Belkin has alleged with particularity the "where" and "what" circumstances of its inequitable conduct claim. *See Exergen*, 575 F.3d at 1330.

Cyber argues that "Belkin's Opposition is silent as to 'how' Mr. Westrup's mistake was supposedly designed to manipulate and mislead the PTO." Dkt. 31 at 5. In response, Belkin states that Westrup was the specific individual associated with the '942 Patent as it was originally filed and that but for his inventorship representation to the PTO, the patent would not have issued. Dkt. 28 at 14-15. Belkin also makes this assertion in its pleadings: "the patent could not have issued to Westrup if he had been truthful about the inventorship." Dkt. 23 at 7, ¶ 8.

In order to satisfy the "how" requirement under *Exergen*, a party must plead "'how' an examiner would have used this information in assessing the patentability of the claims." 575 F.3d at 1330. This information puts a party on notice of how the material misrepresentation or omission was committed before the PTO. *Id.* at 1328. Under Rule 9(b), a court must focus on the sufficiency of the pleadings. *Id.* at 1326 ("'Inequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)" (citation omitted)). Under the applicable standards, the Court finds that Belkin sufficiently pleaded the "how" requirement under *Exergen* and Rule 9(b) by explaining that the PTO would not have issued the '924 Patent without Westrup's representation.

### 3. Belkin Sufficiently Pleaded Materiality and an Intent to Deceive the PTO

A pleading of inequitable conduct also must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen,* 575 F.3d at 1327. In order to survive a motion to dismiss, Belkin need only state facts that give rise to a reasonable inference that an individual knew of the withheld material information and

withheld the information with the intent to deceive the PTO. *See id.* at 1328-29. "A reasonable

inference is one that is plausible and flows logically from the facts alleged, including any

objective indications of candor and good faith." *Id.* at 1329 n.5.

Cyber argues that Belkin's pleading fail to include an allegation that Westrup

"understood the legal definition of inventorship and appreciated that the named inventor was

erroneous at the time the statement was made." Dkt. 26 at 9-10. Cyber also argues that the

Certificate of Correction was based on an innocent mistake, not on any intent to deceive, and that

making a mistake does not satisfy the standard for inequitable conduct. *See Therasense*, 649 F.3d

at 1290 ("A finding that the misrepresentation or omission amounts to gross negligence or

negligence under a 'should have known' standard does not satisfy this intent requirement.").

In its Third Counterclaim, Belkin alleges:

> Westrup signed a written assignment declaring that he was "the
> sole inventor of an invention entitled, COVER FOR PORTABLE
> ELECTRONIC DEVICE" and purported to assign the entire
> interest in the invention to Plaintiff Cyber Acoustics. Westrup's
> written representation that he was the sole inventor was false. As
> Cyber Acoustics acknowledges, Westrup did not even contribute to
> the invention. *On information and belief, Westrup's false statement
> can only have been made with deceptive intent and with knowledge
> that he was not the inventor*.

Dkt. 23 at 14, ¶ 29 (emphasis added). Belkin also alleges that:

> Westrup's false claim of inventorship was a material
> misrepresentation, because the patent would not have issued but
> for Westrup's false claim of inventorship. If Westrup ha[d] [*sic*]
> truthfully informed the USPTO that he did not invent the subject
> matter of the patent, the patent could not have issued to him
> pursuant to 35 [U.S.C.] §§ 101 and 102(f), applicable to patents
> filed before March 16, 2013.

Dkt. 23 at 15, ¶ 33. Similar allegations are repeated throughout Belkin's Third Counterclaim and

Third Affirmative Defense.

PAGE 13 – OPINION AND ORDER

The Court finds that it is reasonable to infer that Westrup misrepresented that he was the inventor of the '924 Patent with an intent to deceive because he was aware of his duty of candor to the PTO. *Advanced Magnetic*, 607 F.3d at 830. Belkin argues that *Advanced Magnetic* stands for the proposition that "misrepresenting inventorship may be the kind of material misrepresentation that will sustain an inequitable conduct claim." Dkt. 48 at 2. Cyber, in response, asserts that *Advanced Magnetic* does not create a presumption and supports the argument that Belkin must allege Westrup's motive in order to survive Cyber's motion to dismiss.

In *Advanced Magnetic*, the Federal Circuit upheld a district court's ruling that a claimed inventor "concealed the most critical information: he was not the inventor he claimed to be." *Id.* *Advanced Magnetic* did not analyze the pleading requirements for an inequitable conduct claim. *See id.* at 829-30. Moreover, the case did not create a presumption of inequitable conduct. *See id.* There is also no indication that *Advanced Magnetic* required allegations relating to *motive* at the *pleading* stage. On the merits, the district court found by "clear and convincing evidence" that the "single most reasonable inference" from the evidence was that the falsely named inventor had an intent to deceive the PTO. *Id.* at 830. *Advanced Magnetic* is relevant here, at most, because it demonstrates that a claim for inequitable conduct can be based on a person's false claim of inventorship and that on the merits, an inequitable conduct claim is fact-specific and context-dependent.

The Court also is not convinced by Cyber's argument that Belkin must allege precisely what was Westrup's specific motive in allegedly deceiving the PTO. *Exergen* provides that Belkin must simply plead "*facts* from which a court may reasonably infer that a specific individual . . . withheld or misrepresented this information with a specific intent to deceive the

PTO." *See Exergen*, 575 F.3d at 1328-29 (emphasis added). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5. Belkin's allegations provide that "Westrup's statement was made with deceptive intent, as it is implausible for Westrup to have believed himself to be the 'sole inventor' of a subject matter that he did not invent at all." Dkt. 23 at 14, ¶ 30. It is plausible to conclude that Westrup had the requisite intent to deceive the PTO because he had no basis to claim inventorship. An intent to deceive can be based on "completely false statements" to the PTO. *See Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345-46 (Fed. Cir. 2013). Belkin's pleadings meet the requirements of *Exergen*. 575 F.3d at 1328-29.

Moreover, at oral argument, Belkin argued that although it was not required to allege a *specific* motive, there are various reasons, or potential motives, why a person might make a false claim of inventorship. The Court notes several possible reasons, such as the potential for receiving a pecuniary bonus from Cyber for creating a patentable invention or the reputational benefits of being a named inventor of a patent, could be reasons why Westrup may have made a false claim of inventorship to the PTO. Without discovery, it is difficult to conclude with any degree of confidence what was Westrup's alleged motive to deceive the PTO. On the merits, Belkin will be required to show that Westrup's intent to deceive is "the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Advanced Magnetic*, 607 F.3d at 829; s*ee also Intellect Wireless*, 732 F.3d at 1346. That level of specificity, however, is not required at the pleading stage of a claim of inequitable conduct.

Based on the pleadings alone, the Court agrees that it is peculiar that Westrup claimed to be the "sole inventor" of the '924 Patent, when in fact, he was not even a co-inventor that contributed to the joint conception of the invention. *See, e.g.*, *Univ. of Pittsburgh v. Varian Med.*

*Sys., Inc.*, 569 F.3d 1328, 1335 (Fed. Cir. 2009) (setting out the standards for co-inventorship); c*f. Zvelo, Inc. v. SonicWall, Inc.*, No. 06-cv-00445-PAB-KLM, 2013 WL 5443858, at *8-10 (D. Co. Sept. 30, 2013) (denying a motion to dismiss an inequitable conduct counterclaim based on a party's misrepresentation of inventorship to the PTO). Despite this peculiarity, there may be an innocuous or innocent explanation for Westrup's erroneous declaration of sole inventorship to the PTO. The explanation, however, will have to wait for discovery and, perhaps, trial. At this early stage of the proceedings, however, Belkin has demonstrated that an intent to deceive is plausible and flows logically from the facts alleged. Thus, Cyber's motion to dismiss the inequitable conduct counterclaim based on Westrup's misrepresentation of inventorship to the PTO is DENIED.

**B.  Motion to Strike**

Cyber also requests that the Court strike Belkin's Third Affirmative Defense alleging inequitable conduct. A court may strike an affirmative defense under Rule 12(f) where it presents an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). For the reasons stated above, Belkin has sufficiently pleaded its inequitable conduct counterclaim and thereby put Cyber on "fair notice of the defense." *See Wyshak*, 607 F.2d at 827. Including the inequitable conduct affirmative defense will not force the parties to "spend time and money litigating spurious issues." *See Fogerty*, 984 F.2d at 1527. Thus, Belkin's Third Affirmative Defense is not legally insufficient. *See McArdle*, 657 F. Supp. 2d at 1149-50. Cyber's Motion to Strike under Rule 12(f) is DENIED.

## CONCLUSION

Because Belkin's Third Counterclaim and Third Affirmative Defense satisfy the level of specificity and sufficiently allege materiality and intent required by Rule 9(b) and applicable

case law, Cyber's Motion to Dismiss or Strike the Inequitable Conduct Assertions in Belkin's

First Amended Answer and Amended Counterclaims (Dkt. 25) is **DENIED**.

**IT IS SO ORDERED**.

DATED this 27th day of December, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge