# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CYBER ACOUSTICS, LLC**, | Case No. 3:13-cv-01144-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **BELKIN INTERNATIONAL, INC.**, | |
| Defendant. | |

Rudolph A. Telscher, Jr., Kara R. Fussner, David A. Nester, and Greg W. Meyer, DICKEY & PIERCE, P.L.C., 7700 Bonhomme Avenue, Suite 400, St. Louis, MO 63105; Susan D. Pitchford, CHERNOFF VILHAUER LLP, 601 S.W. Second Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

David P. Enzminger, David P. Dalke, and Jenna W. Logoluso, WINSTON & STRAWN LLP, 333 S. Grand Avenue, 38th Floor, Los Angeles, CA 90071; Jon P. Stride, TONKON TORP LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Suite 1600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This is an action by Plaintiff Cyber Acoustics, LLC ("Cyber") against Defendant Belkin International, Inc. ("Belkin") alleging infringement of U.S. Patent No. 8,281,924 (the "'924 Patent"). Cyber alleges that protective covers sold by Belkin for electronic tablets (for example, an Apple iPad®) infringe one or more claims of the '924 Patent. On March 10, 2014, the Court held a claim construction hearing. Based on the parties' briefs, other papers filed in the claim construction proceeding, and the argument of counsel, the Court construes the disputed terms below.

PAGE 1 – OPINION AND ORDER

## STANDARDS

### A. Claim Construction

Patent infringement analysis involves two steps. First, the court construes the asserted claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Second, the fact finder determines whether the accused product or method infringes the asserted claim as construed. *Id.* The first step, claim construction, is a matter of law. *See Markman*, 517 U.S. at 372; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Patent claims must precisely define the relevant invention and thereby serve to put both the public and competitors on notice of the claimed invention. *See Phillips*, 415 F.3d at 1312.

In interpreting a patent claim during the claim construction process, there are "numerous sources that [a district court] may properly utilize for guidance." *Vitronics*, 90 F.3d at 1582. Some types of evidence are "more valuable than others." *Phillips*, 415 F.3d at 1324. The relevant sources of evidence include both intrinsic evidence and extrinsic evidence. *Vitronics*, 90 F.3d at 1582. A court begins claim construction with consideration of intrinsic evidence in the record, consisting of the claim terms, the patent specification, and the patent prosecution history. *Phillips*, 415 F.3d at 1313. Where the intrinsic evidence alone fails to resolve a claim construction dispute, a court may consider extrinsic evidence. *Vitronics*, 90 F.3d at 1583. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.

Intrinsic evidence is the court's starting point because it is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582. The first type of intrinsic evidence is "the words of the claims themselves, both asserted and nonasserted." *Id.* The words of a claim are "generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (citation and quotation marks omitted). A claim term's "ordinary and customary meaning" is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313.

There is a "heavy presumption" that a claim term carries its "ordinary and customary meaning." *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007). There are two exceptions to this general rule: (1) "when a patentee sets out a definition and acts as his own lexicographer;" or (2) "when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1563 (Fed. Cir. 1990) ("It is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer and thus may use terms in a manner contrary to or inconsistent with one or more of their ordinary meanings." (citation omitted)).

In some cases, the "ordinary meaning of claim language" may be "readily apparent to lay judges," in which case, "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In such cases, commonplace terms or those that a juror can easily use without further direction from the court "do not need to be construed because they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history." *Bd. of Trs. of Leland Stanford*

*Junior Univ. v. Roche Molecular Sys., Inc.*, 528 F. Supp. 2d 967, 976 (N.D. Cal. 2007). In those

circumstances, it is enough to hold that the ordinary and customary meaning controls. *Finjan,*

*Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (holding that the

district court "was not obligated to provide additional guidance to the jury" beyond directing the

jury to apply the "ordinary meaning" of a claim term).

    "[T]he context in which a term is used in the asserted claim can be highly instructive."

*Phillips*, 415 F.3d at 1314. For example, it is improper for a court to interpret a claim term in a

manner that renders subsequent claim terms superfluous. *See Stubmo v. Eastman Outdoors, Inc.*,

508 F.3d 1358, 1362 (Fed. Cir. 2007); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364,

1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is

preferred over one that does not do so."). The doctrine of claim differentiation further provides

that the limitations in each claim are presumed to be distinct from one another, although simply

"describing claim elements or limitations in different words does not invariably change the scope

of the claim." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1354 (Fed.

Cir. 2006).

    The second type of intrinsic evidence is the patent specification. A court does not

determine the ordinary meaning of a disputed term "in a vacuum." *Medrad, Inc. v. MRI Devices*

*Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). The claims "must be read in view of the

specification, of which they are a part." *Markman*, 52 F.3d at 979. "[T]he specification is always

highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best

guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The purpose of a patent's

specification is to "teach and enable those of skill in the art to make and use the invention and to

provide a best mode for doing so." *Phillips*, 415 F.3d at 1323. A specification may limit or

disavow the scope of a claim, however, when a patentee makes a "clear and unmistakable disclaimer" deviating from the ordinary meaning. *Thorner*, 669 F.3d at 1366-67. For example, where a specification makes clear that an invention does not include a particular feature, "that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *Thorner*, 669 F.3d at 1366 (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001)).

The Federal Circuit has repeatedly warned, however, that "although the specification often describes very specific embodiments of the invention," the claims should not necessarily be confined to those embodiments. *Phillip*, 415 F.3d at 1323; *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 836 (Fed. Cir. 1991) (holding that "[w]here a specification does not require a limitation, that limitation should not be read from the specification into the claims" (citation, quotation, and emphasis omitted); *see also Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1559 (Fed. Cir. 1996) (holding that "[a] preferred embodiment . . . is just that, and the scope of a patentee's claims is not necessarily or automatically limited to the preferred embodiment"). Ultimately, there is "no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. The court must "read the specification in light of its purposes in order to determine whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Decisioning.com, Inc. v. Federated Dept. Stores, Inc.*, 527 F.3d 1300, 1308 (Fed. Cir. 2008) (quoting *Phillips*, 415 F.3d at 1323).

The third type of intrinsic evidence is the prosecution history of a patent (or the "file wrapper"), if it is in evidence. *Markman*, 52 F.3d at 980; *see also Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) ("[A]n invention is construed not only in light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office."). The patent history with the U.S. Patent and Trademark Office ("PTO") "contains the complete proceedings . . ., including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. Because the prosecution represents an "ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. The prosecution history, however, can inform the meaning of a claim term where a patentee makes "a clear and unmistakable disavowal of scope during prosecution." *Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927, 934 (Fed. Cir. 2013). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution." (citation and quotation marks omitted)). If the alleged disavowal of the claim scope is ambiguous, it will not limit the scope of the claim. *Creative Integrated Sys., Inc.*, 526 F. App'x at 934.

Generally an "analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics*, 90 F.3d at 1583. Where that is the case, "it is improper to rely on extrinsic evidence." *Id.* Where the ordinary and customary meaning of a claim term is not apparent based on the intrinsic evidence, courts are authorized to consult extrinsic evidence.

*Markman*, 52 F.3d at 980. Relevant extrinsic evidence includes "expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 980. Judges may "rely on dictionary definitions when construing claims, 'so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.'" *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1368 (Fed. Cir. 2012) (quoting *Phillips*, 415 F.3d at 1322). Indeed, "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into a meaning of the term in the abstract, out of its particular context, which is the specification." *Phillips*, 415 F.3d at 1321. Thus, a patentee is not "entitled to a claim construction divorced from the context of the written description and prosecution history." *Nystrom v. Trex Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005). Extrinsic evidence, therefore, is "less reliable than the patent and its prosecution history in determining how to read claim terms," and its consideration is within the court's sound discretion. *Phillips*, 415 F.3d at 1318-19.

**B.  Indefiniteness**

A patent must contain claims "particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as his invention." 35 U.S.C. § 112(b). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Indefiniteness is a legal issue for the court to resolve. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 897 (Fed. Cir. 2013). A claim is indefinite only when it is "not amenable to construction" or is "insolubly ambiguous." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation and quotation marks omitted). The mere "reduction of the

meaning of a claim into words is not dispositive of whether the term is definite." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.* ("*Star Scientific I* "), 537 F.3d 1357, 1371 (Fed. Cir. 2008) (citations omitted). If claim construction results in a definition "that does not provide sufficient particularity and clarity to inform skilled artisans of the bounds of the claim, the claim is insolubly ambiguous and invalid for indefiniteness." *Id.* On the other hand, "[a]bsolute clarity is not required to find a claim term definite." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.* ("*Star Scientific II*"), 655 F.3d 1364, 1373 (Fed. Cir. 2011). A claim is sufficiently definite to satisfy the statute if "one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "[C]lose questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Id.* at 1380.

General principles of claim construction are applicable to determining "whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). Thus, the court may consider intrinsic evidence consisting of the claim terms, the specification, and the prosecution history. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332-33 (Fed. Cir. 2010). In addition, the court may also consider extrinsic evidence when necessary to resolve disputes of indefiniteness. *Exxon Research*, 265 F.3d at 1376.

## BACKGROUND

This case concerns a patent disclosing covers for portable electronic devices, such as the Apple iPad® or other tablets. Pl.'s Compl., Dkt. 1 at 2 ¶ 8. Plaintiff Cyber alleges that Defendant Belkin is infringing Cyber's '924 Patent. *Id.* The '924 Patent is made up of four claims. Pl.'s Ex. 1 at 6, Dkt. 51-1. Claim 1 is an independent claim with six sub-parts labeled (a) through (f). *Id.* Claims 2 through 4 are dependent claims. *Id.* The '924 Patent also contains eight figures illustrating the structure and function of the alleged invention. *Id.* at figs.1-8.

**A.  History of the '924 Patent**

On August 20, 2010, Cyber filed an application for a portfolio-style protective cover that would hold an electronic tablet device, allow it to stand up, and protect it from damage if struck or dropped. Pl.'s Ex. 1, Dkt. 51-1 at 1; Pl.'s Ex. 3, Dkt. 51-3 at 8. Shortly thereafter, the PTO recorded an assignment of the application from Joseph Westrup to Cyber Acoustics, LLC. Pl.'s Ex. B, Dkt. 1-2 at 1. The U.S. Patent Application 12/860,808 (the "'808 Application") contained six claims, which read:

1.  A protective cover for electronic devices comprising:

(a) a foldable portfolio having a top and a bottom with corners on said top and said bottom;

(b) a four-cornered, generally rectangular O-shaped frame secured to the inside of said bottom;

(c) legs integral with the four corners of said frame oriented radially outwardly from said frame; and

(d) resilient corner-engaging lugs integral with said legs.

2.  The cover of claim 1 wherein said top and said bottom comprise three plies of (i) a soft inside layer; (ii) a durable outside layer; and (iii) a stiff middle layer.

3.  The cover of claim 2 further comprising reversible elastic straps secured to the corners of said top and said bottom.

4.  The cover of claim 3 further comprising an elastic strap secured to the inside of said top.

5.  The cover of claim 4 further comprising a flap on the outside of said bottom.

6.  The cover of claim 5 further comprising a hinge integral with said top that permits said top to be partially opened to an angle of about 90° relative to the remainder of said top and to engage said flap.

Pl.'s Ex. 3, Dkt. 51-3 at 4. Three months later, Cyber amended Claim 1 of the '808 Application as follows:

1.  (currently amended) A protective cover for electronic devices comprising:

(a) a foldable portfolio having a top and a bottom with corners on said top and said bottom;

(b) a four-legged ~~cornered, generally rectangular O-shaped~~ frame secured to the inside of said bottom;

(c) the four legs ~~integral with the four corners~~ of said four-legged frame oriented in an X-shaped configuration relative to each other ~~radially outwardly from said frame~~; and

(d) resilient corner-engaging lugs integral with each of said four legs.

Pl.'s Ex. 4, Dkt. 51-4 at 2.[1]

On July 21, 2011, the PTO Examiner ("Examiner") rejected all the claims of the '808 Application. Pl.'s Ex. 5, Dkt. 51-5 at 1-2. The Examiner rejected Claims 1 and 3 through 6 under 35 U.S.C. § 103(a) as being obvious and unpatentable over "Patterson (US 2008/0237432) in view of Nieves (US 2004/0173482) and Mish (US 2010/149739)." *Id.* at 3. Regarding Claim 1, the Examiner found that Patterson disclosed:

> [A] protective cover for electronic devices comprising a foldable portfolio (3) having a top (15) and a bottom (10) with corners on said top and said bottom; a four-legged frame (6) secured to the inside of said bottom (10); the four legs of said four-legged frame oriented in an X-shaped configuration relative to each other radially outwardly from said frame (see figure 1).

*Id.* The Examiner concluded that given the prior art, "[i]t would have been obvious to one of ordinary skill in the art at the time the invention was made to have modified the cover of Patterson having engaging lugs of Nieves and disposed on the corners as disclosed by Mish." *Id.* at 3-4. The Examiner rejected Claim 5 and found that Patterson "disclosed a flap (26) on the outside of said bottom (10) (see figure 1)." *Id.* at 4. Finally, the Examiner rejected Claim 6 (relating to the hinge) because Patterson disclosed "a hinge (18) integral with said top (15) that permits said top to be partially opened to an angle of about 90º relative to the remainder of said top and to engage said flap." *Id.*

---

[1] During patent prosecution, the PTO requires words that are added to the claims to appear in underlined font and words that are removed to appear in strike-through font. *See* 37 C.F.R. § 1.121(c)(2).

On August 9, 2011, Cyber responded to the July 2011 office action. Pl.'s Ex. 6, Dkt. 51-6 at 1. Cyber argued to the PTO that the cited prior art did not disclose the claimed matter. Regarding the rejection of Claims 1 and 3 through 6, Cyber argued that Patterson did not disclose a four-legged frame having its four legs oriented in an X-shape configuration. *Id.* at 2. Cyber did not make a specific argument related to the terms "top," "bottom," "flap," or "to engage said flap." On September 29, 2011, the PTO sent notification of a final office action rejecting Claims 1 through 6 as obvious and unpatentable. Pl.'s Ex. 7, Dkt. 51-7 at 1-2.

Cyber next filed an Appeal Brief on October 17, 2011. Pl.'s Ex. 8, Dkt. 51-8 at 1. Cyber maintained in the appeal its position that Claims 1 and 3 through 6 were improperly rejected on the basis of Patterson because Patterson failed to disclose the four-legged frame. Pl.'s Ex. 9, Dkt. 51-9 at 6-7. Moreover, Cyber argued that Claim 5 was improperly rejected because it included the limitation of a flap on the outside of the bottom of the cover. Regarding Claim 6, Cyber differentiated Patterson again, arguing that the hinge limitation disclosed in the '808 Application is not disclosed in either the Patterson specification or drawings. *Id.*

Thereafter, the Examiner re-opened prosecution of the '808 Application and issued a Non-Final Office Action on December 28, 2011. Pl.'s Ex. 10, Dkt. 51-10 at 1-2. The Examiner rejected the '808 Application on two separate grounds: (1) indefiniteness pursuant to 35 U.S.C. § 112; and (2) obviousness pursuant to 35 U.S.C. § 103(a). *Id.* at 3-4. The Examiner rejected Claims 3 through 6 as indefinite for "failing to particularly point out and distinctly claim the subject matter" of the alleged invention because it was unclear how the elastic straps were secured to the corners of the top and bottom of the protective cover. *Id.* at 3-4.

The Examiner also again rejected Claims 1 and 3 through 6 as obvious and "being unpatentable over Patterson (US 2008/0237432) in view of LeGette (US 2010/0072334)." *Id.*

at 4. Further, the Examiner noted that the "X-shaped base portion" of the frame was "a matter of

design" and did "not provide any advantage to the frame" because "the base portion [of the

cover] [could] have an unlimited number of skeletal shapes, so long as there are four corners for

the lugs." *Id.* at 5. The Examiner concluded: "It is clear that there is no novelty in an X-shaped

[*sic*] frame." *Id.* Claims 3 through 6 were also rejected on obviousness grounds "as being

unpatentable over Patterson (US 2008/0237432), LeGette (US 2010/0072334) and Moser

(US 2007/0119735) . . ., and further in view of Austin (No. 549,890)." *Id.* at 6. Specifically, the

Examiner rejected Claim 3 in light of Patterson and Austin's disclosure of an elastic strap,

Claim 4 in light of Austin's disclosure of an elastic strap on the inside of the protective cover,

and Claims 5 and 6 in light of Patterson's disclosure of "a flap (26) on the outside of said

bottom" and "a hinge (18) integral with said top (15) that permits said top to be partially opened

to an angle of about 90° relative to the remainder of said top and to engage said flap." *Id.*

On February 24, 2012, Cyber filed an amendment to Claim 3 and provided further

argumentation in response to the December 28, 2011 Non-Final Office Action. Pl.'s Ex. 11,

Dkt. 51-11 at 1-2. Cyber modified Claim 3 to clarify that the elastic straps were "secured to the

corners of said top" and not to the corners of the bottom of the portfolio, thereby addressing the

Examiner's indefiniteness challenge. *Id.* at 2-3. Regarding Claims 1 and 3 through 6, Cyber

responded to the Examiner's obviousness challenge by arguing that the Patterson and LeGette

references did not teach or suggest the X-shaped limitation. *Id.* at 3-4. In response to the

Examiner's challenge that the X-shaped configuration was not novel, Cyber argued that the

X-shaped configuration "provides cross-bracing to the frame, thereby imparting greater stability"

that is "lighter in weight than, for example, some planar configuration." *Id.* at 4. Cyber did not

respond to the Examiner's position that the flap and engagement of the flap in the '808 Application was obvious in light of Patterson. *Id.*

On April 12, 2012, the Examiner issued a Final Office Action rejecting Claims 1 through 6 as obvious under 35 U.S.C. § 103(a) in light of Patterson and LeGette, or in view of Moser or Austin. Pl.'s Ex. 12, Dkt. 51-12 at 3-6. In relevant part, the Examiner rejected that the X-shaped configuration was a patentable limitation, finding that it was disclosed by Patterson and "there is no novelty in an X-shaped [*sic*] frame." *Id.* at 5. Regarding Claims 5 and 6, the Examiner maintained that Patterson further disclosed a flap "on the outside of said bottom" and the hinge feature in the '808 Application. *Id.* at 6. On August 20, 2010, Cyber once again appealed the Examiner's rejection of the '808 Application. Pl.'s Ex. 14, Dkt. 51-14 at 1.

On July 30, 2012, the Examiner and Cyber's representative spoke by telephone about the merits of the case. Pl.'s Ex. 15, Dkt. 51-15 at 3. Ultimately, the Examiner agreed to withdraw the rejection to the claims if the recitations of dependent Claims 5 and 6 were added to independent Claim 1. *Id.*

On October 9, 2012, the PTO granted the '808 Application and issued the '924 Patent. '924 Patent, Dkt. 51-1. Cyber filed this lawsuit on July 9, 2013. Dkt. 1.

**B. Disputed Terms**

The parties disagree as to the construction of four terms used in the '924 Patent. The claim terms in dispute are: (1) "top;" (2) "bottom;" (3) "flap;" and (4) "to engage said flap." Cyber argues that several of these terms need not be construed, but to the extent the Court wishes to construe them, Cyber offers its own construction of the disputed terms. In response, Belkin contends that Cyber's constructions are not in harmony with the "plain and ordinary meaning" of the terms and are merely attempts to favor Cyber's infringement allegations. Belkin also

challenges the phrase "X-shaped configuration" in Claim 1 as indefinite and in contravention of

35 U.S.C. § 112(b).

## DISCUSSION

### A.  The Patented Invention

The '924 Patent is directed to a cover for a portable electronic device designed to provide

"unique and useful features that protect such devices from damage and provide support for

operating such devices for a desktop or similar flat surfaces." Pl.'s Ex. 1, Dkt. 51-1 at 6.

The '924 Patent reads as follows (with added emphasis in Claim 1 on the disputed terms):

1.  A protective cover for electronic devices comprising:

    (a) a foldable portfolio having a *top* and a *bottom* with corners on said *top* and
        said *bottom*;

    (b) a four-legged frame secured to the inside of said *bottom*;

    (c) the four legs of said four-legged frame oriented in an *X-shaped
        configuration* relative to each other; and [*sic*]

    (d) resilient corner-engaging lugs integral with each of said four legs;

    (e) a *flap* on the outside of said *bottom*; and

    (f) a hinge integral with said *top* that permits said *top* to be partially opened to
        an angle of about 90º relative to the remainder of said *top* and *to engage
        said flap*.

2.  The cover of claim 1 wherein said top and said bottom comprise three plies of (i)
    a soft inside layer; (ii) a durable outside layer; and (iii) a stiff middle layer.

3.  The cover of claim 2 further comprising reversible elastic straps secured to the
    corners of said top.

4.  The cover of claim 3 further comprising an elastic strap secured to the inside of
    said top.

**B.  Claim Construction**

    **1.  Term One: "top"**

The term "top" appears in Claims 1 through 4 of the '924 Patent. The parties propose the following competing constructions of the term "top":

| Cyber | Belkin |
|---|---|
| Plain and ordinary meaning | The portion of the folio that contacts the four-legged frame when the folio is in the closed position |

      **a.  Cyber's Position**

Cyber contends that "top" should be given its plain and ordinary meaning because it is so well understood that no further construction is required. Beginning with the text of Claim 1(a), the term top is first mentioned as a part of "a foldable portfolio having a top and a bottom with corners on said top and said bottom." '924 Patent, Dkt. 51-1 at 6. Cyber argues that the use of the term "top," and any subsequent limitations used in combination with that term, do not define the meaning of "top." Moreover, Cyber argues that to read these limitations into the definition of top would render later limitations superfluous. *See Inpro II Licensing*, 450 F.3d at 1354.

Cyber argues that the '924 Patent specification does not reveal any additional meaning. Although the specification presents an exemplary cover, Cyber argues that this does not serve to redefine any claim term within the '924 Patent. Cyber's final point is that although the prosecution history of the '924 Patent references the exemplary cover, Cyber only did so in a representation to the Patent Office Board of Appeals because Cyber was required to provide an explanation of the claimed subject matter. *See* 37 C.F.R. § 41.37(c)(iii). In sum, Cyber argues that its choice to use a broad term is not disavowed by any relevant intrinsic evidence.

### b. Belkin's Position

Belkin proposes an 18-word definition for the term "top" and argues that it should be defined as: "The portion of the folio that contacts the four-legged frame when the folio is in the closed position." Belkin bases its construction largely on the '924 Patent specification's reference that the "foldable portfolio 10" has "a top 10a." Belkin also relies on Figure 5, which depicts that when the portfolio is in the closed position, the top 10a is in contact with the four-legged frame.

### c. Claim Construction for "top"

The Court finds that "top" should be given its plain and ordinary meaning and is a term that is so readily understandable that it need not be subject to further construction. *See Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1313-14 (Fed. Cir. 2005) (declining to limit the scope of a disputed term to a figure depicted within a patent and giving the disputed term its "common-sense meaning"); *W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004) (holding that "'single piece' is sufficiently clear to make even resort to the dictionary unnecessary").

Although Belkin seeks to clarify which portion of the portfolio is the top, there are several errors in Belkin's definition of the term "top." With regard to the preferred embodiment described in the '924 Patent specification, Belkin concedes its interpretation is meant to "read[]" on the exemplary embodiment of the '924 Patent." Def.'s Resp. Br., Dkt. 58 at 12. Belkin's definition, however, inaccurately imports, or reads in, limitations from the exemplary embodiment of the '924 Patent.

Beginning with the text of the claim, there is no limitation requiring the portfolio to have specific features when in the closed position. In addition, the '924 Patent specification makes no mention of what the "top" must come into contact with when in the closed position. The

specification references aspects of the top 10a of the portfolio in the closed position once, and provides that the "[t]op 10a is preferably provided at its corners with reversible elastic straps 40 that may be secured to bottom 10b at corresponding corners to secure cover 1 in a closed or open position." '924 Patent, Dkt. 51-1 at 6. There is no other mention of the concept of a closed position. Adopting Belkin's proposed construction violates a basic tenet of claim construction by reading a limitation into a claim term based on an exemplary embodiment. *See Phillips*, 415 F.3d at 1323 (rejecting the argument that if "a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"). There is no portion of the '924 Patent specification that states that the depictions are meant to be "strictly coextensive," and thus Cyber was merely "setting out specific examples of the invention" in order "to teach a person of ordinary skill in the art how to make and use the invention." *See id.*

Belkin also cites to several of Belkin's accused products for the proposition that Cyber's proposed construction is merely an attempt to construe broadly the '924 Patent for infringement purposes. The Court has considered the allegedly infringing products solely for the purpose of establishing the context of the suit at issue, but follows the rule that "claims may not be construed with reference to the accused device." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330 (Fed. Cir. 2006) (citation and quotation marks omitted); *see also SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) (holding that during claim construction, "claims are not construed 'to cover' or 'not to cover' the accused device").

### 2. Term Two: "bottom"

The term "bottom" appears in Claims 1 and 2 of the '924 Patent. The parties propose the following competing constructions of the term "bottom":

| Cyber | Belkin |
|-------|--------|
| Plain and ordinary meaning | The outside portion of the folio to which each of the legs of the four-legged frame is secured |

### a.  Cyber's Position

As with the term "top," Cyber contends that "bottom" should be given its plain and ordinary meaning because it is also well understood and requires no further construction. Cyber's general point is that the '924 Patent recites that "the portfolio includes a top and a bottom, meaning the top is not the bottom, and the bottom is not the top." Pl.'s Opening Br., Dkt. 50 at 23. Cyber concedes that Claim 1(b) recites a "four-legged frame secured to the inside of said bottom," but notes that this further limitation does not define what the bottom is or is not. *See Inpro II Licensing*, 450 F.3d at 1354. Cyber argues that unless there is a clear disavowal in claim scope, Cyber should be entitled to the full scope of the term "bottom." *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). Cyber also argues there is limited reference to the term "bottom" in the prosecution history of the '924 Patent.

### b.  Belkin's Position

Belkin defines the term "bottom" as: "The outside portion of the folio to which each of the legs of the four-legged frame is secured." Belkin's proposed construction is largely predicated on the preferred embodiment described in the '924 Patent specification. Belkin contends that because the specification describes the "top," "bottom," and "flap" as separate features, the Court should look to those distinguishing features in defining the disputed terms. The primary concern that Belkin raises is that the term "bottom" of the portfolio should be defined so it is clear that the bottom of the portfolio cannot also function as the flap.

PAGE 18 – OPINION AND ORDER

### c.  Claim Construction for "bottom"

The Court construes "bottom" to have its plain and ordinary meaning. The term "bottom" is sufficiently clear in context that the Court does not believe there is any potential for the term to confuse the jury if not construed. Courts are not required to construe a term if it could be readily understood by a layperson. *See Finjan*, 626 F.3d at 1206-07 (holding that the district court did not err by not explicitly construing the term "addressed to a client" and relying on its ordinary meaning); *Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Claim 1(a) describes "a foldable portfolio having a top and a bottom with corners on said top and said bottom." Based on the '924 Patent claims, and the use and orientation of the product as described in the specification, the Court notes it would be plain to a layperson which portion is the top versus the bottom of the foldable portfolio.

Belkin contends that the Federal Circuit's decision in *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), prohibits, or at least advises against, the Court in this case from adopting the plain and ordinary meaning of "bottom." In *O2 Micro*, the Court held that "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary meaning' or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." 521 F.3d at 1361. In that case, the parties agreed that the claim term "only if" had a common meaning, "but then proceeded to dispute the scope of that claim term." *Id.* Here, Belkin's arguments about the meaning of the term "bottom" ultimately go to what may or may not function as the *flap*, not that the term "bottom" lacks a meaning that would be apparent "to a

person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *See id.* at 1360. In that regard, *O2 Micro* is inapposite.

The Court rejects Belkin's construction for several reasons. Belkin's construction appears accurately to describe Figure 3 in that only the outside of the bottom 10b is visible. '924 Patent, Dkt. 51-1. Further, it is apparent from Figure 3 that the four-legged frame is only attached to the bottom 10b. Adopting Belkin's construction, however, would be inconsistent with the claim terms and specification.

To begin, Belkin's construction of "bottom" improperly engrafts claim limitations not present in the '924 Patent. In particular, Belkin's construction requires that "each of the *legs* of the four-legged frame" be secured to "the folio." Claim 1(b), however, merely requires that the *frame* be "secured to the inside of said bottom." '924 Patent, Dkt. 51-1 at 6. Belkin's proposed construction also seizes on a feature depicted in Figure 1 of the '924 Patent and assumes that this exemplary embodiment is a limitation on the meaning of "bottom." Figure 1 depicts the portfolio in an open position, and the frame 20 attached to the bottom 10b by what appears to be "stitching" around the edges of the frame 20 and legs 22. *Id.* at fig.1. Belkin argues that the depicted "stitching" lends support to its proposed construction that the "legs" of the frame are attached to the "bottom."

The Court finds that the "stitching" depicted in Figure 1 is an improper basis to define the term "bottom" as the portion of the folio to which "each of the legs of the four-legged frame" *must* be secured. *See Phillips*, 415 F.3d at 1323; *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (cautioning that "patent coverage is not necessarily limited to inventions that look like the ones in the figures" because such an approach would amount to "import[ing] limitations onto the claim from the specification, which is fraught with

danger"). Belkin's construction is based on an interpretation of the exemplary embodiment depicted in Figure 1 of the '924 Patent. Yet, the Court cannot rely on such evidence as defining the scope of the term "bottom" without a clear disavowal of claim scope in the '924 Patent specification. *See Thorner*, 669 F.3d at 1366 ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation."); *see also Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). There is no such disavowal in the '924 Patent or specifications.

The Court also notes that Belkin's proposed construction makes some subsequent claim terms redundant and others more narrow than recited. The doctrine of claim differentiation provides that "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The term "bottom" first appears in Claim 1(a), which describes "a foldable portfolio having a top and a bottom with corners on said top and said bottom." '924 Patent, Dkt. 51-1 at 6. Claim 1(b) discloses a "four-legged frame secured to the inside of said bottom." *Id.* If the Court were to adopt Belkin's construction, Claim 1(b) redundantly would read: "a four-legged frame secured to the inside of said <u>outside portion of the folio to which each of the legs of the four-legged frame is secured.</u>" Belkin's proposed construction thus would make the subsequent limitation in Claim 1(b) superfluous, which is in conflict with the "presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315. In short, "[s]uch a construction is disfavored." *See MEMS Tech. Berhad v. Int'l Trade Comm'n*, 447 F. App'x 142, 151 (Fed. Cir. 2011).

The final reason the Court rejects Belkin's construction of the term "bottom" is because of the erroneous inclusion of the phrase "outside portion." Belkin's construction provides that the

"bottom" is the "outside portion of the folio," yet the claims of the '924 Patent reference both an "inside of said bottom," *see* Claim 1(b), and an "outside of said bottom," *see* Claim 1(e). '924 Patent, Dkt. 51-1 at 6. Belkin's construction therefore is inconsistent with the text of the '924 Patent. Belkin's use of the term "outside" is also inconsistent with the way in which "outside" is described in the '924 Patent specification. The terms "inside" and "outside" are put in context at the very beginning of the '924 Patent specification, where it states that the "top 10a and bottom 10b preferably comprise a three-ply lamination of a soft layer 11 such as felt on the *inside* of the portfolio that is in contact with the electronic device P, a durable *outside* layer 12 such as leather, and a stiff middle layer 13 to provide structural support to the top and bottom of the cover." '924 Patent, Dkt. 51-1 at 6 (emphasis added). Based on the text of the claims and specification, the inside of the portfolio, not the outside, is closer to the electronic device, and as a result closer to the four-legged frame.

Furthermore, even the outside of the "bottom" is not unequivocally the "outside portion of folio." Figure 3 depicts the exemplary bottom 10(b) covered in part by a separate flap 50. '924 Patent, fig.3, col.2 l.25-29, Dkt. 51-1. Where the flap covers a portion of the bottom, the flap is in fact on the "outside" of the portfolio, while the area of the bottom that is covered by the flap might otherwise have been on the "outside." In this respect, Belkin's construction is inconsistent with the preferred embodiment of the '924 Patent specification. *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (explaining that "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct" (citation and quotation marks omitted)). Thus, "bottom" cannot be defined as the "outside portion" of the portfolio.

### 2. Term Three: "flap"

The term "flap" appears in Claims 1(e) and 1(f) of the '924 Patent. The parties propose

the following competing constructions of the term "flap":

| Cyber | Belkin |
|---|---|
| Plain and ordinary meaning | A small piece of material attached to the folio only on one side |

#### a. Cyber's Position

Cyber urges the Court to adopt the plain and ordinary meaning of the term "flap" and

argues that nothing in the text of the '924 Patent claims or the specification provide any sort of

limitation for the term. Cyber also argues that during the '924 Patent's prosecution, the limited

arguments relating to the term "flap" were only in response to the Patterson disclosure. Cyber

contested the Examiner's rejection of Claim 1 of the '924 Patent on the basis that Patterson

disclosed a flap. Pl.'s Exs. 8-10, Dkts. 51-8, 51-9, 51-10. These arguments to the PTO, Cyber

argues, do not disavow the claim scope or redefine the meaning of "flap."

To the extent that the Court is willing to rely on any separate dictionary definitions,

Cyber provides several definitions for the Court's consideration. The definitions of "flap" are as

follows:

- *Merriam-Webster's Collegiate Dictionary*: "something that is broad, limber, or flat and usu. thin and that hangs loose or projects freely: as **a**: piece on a garment that hangs free." Pl.'s Ex. 21, Dkt. 51-21 at 3.
- *American Heritage College Dictionary*: "A flat, usu. thin piece attached at one side." Pl.'s Ex. 22, Dkt. 51-22 at 3.

Cyber also provides excerpts from *Webster's Third New International Dictionary*, Pl.'s

Ex. 23, Dkt. 51-23, *Microsoft Encarta College Dictionary*, Pl.'s Ex. 24, Dkt. 51-24, and *The*

*American Heritage Dictionary of the English Language*, Pl.'s Ex. 25, Dkt. 51-25, without

providing a specific citation to a relevant definition. These varying definitions, Cyber argues,

bolster its position that a single dictionary definition should not serve as the "plain and ordinary

meaning for a claim term." Pl.'s Br., Dkt. 50 at 31 n.6. Cyber's position is that any definition should be consistent with the general usage of the term flap as "a flat, usually thin piece attached at one side."

### b.  Belkin's Position

Belkin's proposed definition of the term "flap" is: "A small piece of material attached to the folio only on one side." Belkin relies on the text of Claim 1 and the '924 Patent specification to argue that the flap is a separate structure from the bottom of the portfolio. Claim 1(e), for example, discloses "a flap on the outside of said bottom" and thus indicates that the flap is a separate structure.

Further, Belkin argues that the '924 Patent specification describes "flap" in the following context: the "bottom 10b is preferably provided with a flap 50 designed to capture the outside edge of top 10a when the same is folded back on itself along crease 16 at an angle θ of about 90º so as to create an easel or stand for the entire arrangement, best seen in FIG. 8." '924 Patent, col.2 l.25-29, Dkt. 51-1. Figure 8 depicts the "flap" as a structure separate from the bottom 10b of the portfolio. '924 Patent, fig.8, Dkt. 51-1.

Belkin also argues that the prosecution history of the '924 Patent indicates that "flap" should be construed as a separate structure. Belkin cites to Cyber's October 17, 2011 Appeal Brief to the PTO, where Cyber argued:

> Claim 5 includes the limitation of a flap on the outside of the bottom of the cover. The Examiner asserts that clasp 26 shown in Patterson FIG. 1 meets this. But Patterson does not state what the attachment point of his clasp 26 is, nor precisely how it is attached, stating merely that it is interconnected to base 10.

Pl.'s Ex. 9, Dkt. 51-9 at 7. Belkin argues that the "flap" structure was a critical element of the Examiner's ultimate grant of the '924 Patent. See Pl.'s Ex. 15, Dkt. 51-15 at 3 (documenting the

Examiner agreeing to grant the '924 Patent claims if dependent Claim 5 in the '808 Application was added to independent Claim 1).

Belkin also argues that common dictionary definitions of "flap" indicate that the flap can *only* be attached on one side of the portfolio. Belkin cites:

- *Webster's II New College Dictionary*: "[a] flat, usu. thin piece attached at *only* one side." Def.'s Am. Ex. 1, Dkt. 62-1.
- *Oxford Dictionary Online*: "a piece of something thin, such as cloth, paper, or metal, hinged or attached *only* on one side, that covers an opening or hangs down from something." Def.'s Am. Ex. 2, Dkt. 62-1.
- *Dictionary.com*: "something flat and broad that is attached at one side *only* and hangs loosely or covers an opening." Def.'s Am. Ex. 3, Dkt. 62-1.
- *Free Online Dictionary*: "[a] flat, usually thin piece attached at *only* one side." Def.'s Am. Ex. 1, Dkt. 62-1.

Def.'s Am. Exs. 1-4, Dkt. 62-1 (emphasis added). All these definitions, Belkin argues, indicate that a flap is "a small piece of material attached only on one side."

Belkin's construction is based on concerns that Cyber's interpretation of "flap" may encompass a construction whereby the "bottom" and "flap" could be the same thing or that the "flap" could be attached to other elements of the portfolio (such as the top). Such constructions, Belkin argues, would exclude the preferred embodiment, which is contrary to Federal Circuit law. *See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (reasoning that "a claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct" (citation and quotation marks omitted)).

### c. Claim Construction for "flap"

The Court construes "flap" to mean: "a flat piece of material that has at least one side attached to the portfolio." The text of Claim 1(e) discloses a separate structure, the flap, which is "on the outside of said bottom." '924 Patent, Dkt. 51-1 at 6. The specification, similarly, describes that "the bottom 10b is preferably provided with a flap 50 designed to capture the

outside edge of top 10a." *Id.* Both references in the intrinsic evidence disclose a piece of the portfolio that is attached and separate from the top, hinge, and bottom. The Court's construction is based primarily on the text of Claim 1 and the '924 Patent specification.

Regarding Cyber's proposed definition, the Court finds that there is an underlying ambiguity because of how the disclosed invention functions that makes relying on the plain and ordinary meaning of "flap" untenable. Because the portfolio itself is foldable into a stand, it is not readily apparent what portion or portions of the portfolio necessarily function as the bottom 10b versus the flap 50. *See* '924 Patent, fig.3-8, Dkt. 51-1. Further, both Belkin and Cyber offer conflicting arguments relating to whether the plain and ordinary meaning of the term "flap" would allow the "flap" to connect with other portions of the portfolio on more than one side. For example, Cyber argues that the plain and ordinary meaning of "flap" could include an item "attached to the flap at other sides." Pl.'s Br., Dkt. 50 at 32. In contrast, Belkin argues that a "flap" can attach to the portfolio on *only* one side. This conflict means that under *O2 Micro,* the Court must resolve the underlying claim construction dispute as a matter of law and not leave the issue ambiguous for a jury. *O2 Micro*, 521 F.3d at 1361. Based on the claims and specification, at least one of the four sides of the flap must be attached to the portfolio in order to allow the "flap" to function properly.

Cyber argues that Belkin's proposed restriction that the flap can be attached to the portfolio on only one side is not supported by the intrinsic evidence in the record. Cyber also argues that the dictionary definitions of "flap" provided by Belkin do not mandate that the "flap" be attached to only one side of the portfolio. Cyber further argues that the definitions it provided do not include the "only" requirement, which supports its position that such a limitation should not be read into the '924 Patent claims. Cyber also highlights that several of the online

dictionaries offered by Belkin are from 2013, after the time the '924 Patent claims were drafted. Cyber notes that extrinsic dictionary definitions, if they are used at all, must be from before the date of the issuance of the patent. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003). The Court need not address these arguments because there is enough intrinsic evidence to construe the term "flap."

Cyber also argues that requiring the "flap" to be attached to the portfolio on only one side is an improper limitation. According to Cyber, this would create a redundancy with the text of Claim 1(e) that later requires that the flap is "on the outside of said bottom." Cyber's underlying concern appears to be with potentially interpreting "flap" such that it could not attach, interact, or contact some other part of the portfolio. The Court's construction does not run such a risk. This is best demonstrated by putting the Court's construction in the context of Claim 1(e) and 1(f). Each claim would then read:

- Claim 1(e): <u>a flat piece of material that has at least one side attached to the portfolio</u> on the outside of said bottom;
- Claim 1(f): a hinge integral with said top that permits said top to be partially opened to an angle of about 90° relative to the remainder of said top and to engage said <u>a flat piece of material that has at least one side attached to the portfolio</u> on the outside of said bottom.

Both applications of the Court's construction make clear the location of the flap in relation to other elements of the portfolio—i.e., the "flap" is a separately attached structure. There also is no risk that the exemplary embodiment, *see* Figure 8, is in any way precluded by the Court's construction. '924 Patent, fig.8, Dkt. 51-1.

Regarding Belkin's proposed construction, although the Court finds merit in the argument that the term "flap" should be construed as a structure separate from the "bottom" of the portfolio, there is no reason to presuppose that the "flap" disclosed in the '924 Patent must be "small." Presumably, Belkin suggests limiting the size of the flap because of its depiction in

Figure 3 of the '924 Patent. Such a limitation is improper, however, because "[p]atent drawings

. . . do not define the precise proportions of the elements and may not be relied on to show

particular sizes if the specification is silent on the issue." *Plantronics, Inc. v. Aliph, Inc.*, 724

F.3d 1343, 1351 (Fed. Cir. 2013) (citation and quotation marks omitted); *see also MPEP* § 2125

("When the reference does not disclose that the drawings are to scale and is silent as to

dimensions, arguments based on measurement of the drawing features are of little value.").

The Court also rejects the portion of Belkin's construction that would require the "flap"

to attach to the portfolio on *only* one side. The term "flap" as used in the '924 Patent is broad,

and the '924 Patent claim terms do not contain any indication that the "flap" could not connect

with the portfolio on more than one side. The '924 Patent specification, similarly, describes how

the "flap" would function to "capture the outside edge of the top when the same is folded back

on itself . . . so as to create an easel or stand for the entire arrangement," but does not state that

the "flap" can only connect to the portfolio on one side. '924 Patent, c.2 l.25-29, Dkt. 51-1.

Although the '924 Patent specification does state that this flap function is "best seen in FIG. 8,"

which depicts a flap that is attached on only one side to the bottom of the portfolio, the Court is

reluctant to engraft depicted features from a preferred embodiment into the claim terms. *Id.*

at c.2 l.29, fig.8; *see also See Thorner*, 669 F.3d at 1366 (a limitation in an embodiment alone is

not a clear disavowal of claim scope).

### 2.  Term Four: "to engage said flap"

The phrase "to engage said flap" appears in Claim 1(f) of the '924 Patent. The parties

propose the following competing constructions of the phrase "to engage said flap":

| Cyber | Belkin |
|---|---|
| Plain and ordinary meaning | To use the flap to capture the outside of the top when the top is folded back on itself at a 90 degree angle |

### a. Cyber's Position

Cyber contends that the phrase "to engage said flap" should be given its plain and ordinary meaning. The term "engage," Cyber argues, is a broad, non-limiting word commonly used in patents. In support of its position, Cyber cites *Caddy Products, Inc. v. American Seating Co.*, 2008 WL 927569 (D. Minn. Apr. 4, 2008), and *3M Innovative Properties Co. v. Louis M. Gerson Co., Inc.*, 2010 WL 4106712 (D. Minn. Oct. 12, 2010), as relevant cases finding a plain and ordinary meaning of the term "engage."

In the alternative, Cyber suggests construing "to engage said flap" as "to come or fit together with the flap." To support this position, Cyber argues that "engage" must mean to come into physical contact. *See Sollami Co. v. Kennametal Inc.*, 2006 WL 6211761, at *10 (W.D. Pa. Aug. 29, 2006) (parties agreeing that "engaging" means to "physically contact"); *Am. Seating Co. v. Freedman Seating Co.*, 450 F. Supp. 2d 765, 774 (W.D. Mich. 2006) (same). At minimum, Cyber contends that the type of engagement described need not mirror the exemplary embodiment or the separate claim limitations within the '924 Patent.

### b. Belkin's Position

Belkin proposes that "to engage said flap" means: "[t]o use the flap to capture the outside of the top when the top is folded back on itself at a 90 degree angle." In support of its construction, Belkin relies solely on the portion of the '924 Patent specification that describes "a flap 50 designed to capture the outside edge of top 10a when the same is folded back on itself along crease 16 at an angel θ of about 90º so as to create an easel or stand for the entire arrangement, best seen in FIG. 8." '924 Patent, col.2 l.25-29, Dkt. 51-1.

### c.  Claim Construction for "to engage said flap"

The Court construes "to engage said flap" to mean "to physically connect the top with the flap." The text of Claim 1(e) describes a hinge integral with the top that permits the top to be "partially opened to an angle of about 90º relative to the remainder of the top and to engage the flap." '924 Patent, Dkt. 51-1. The specification of the patent explains that the configuration described in Claim 1(e) allows the flap to "capture the outside edge of top 10a . . . so as to create an easel or stand for the entire arrangement, best seen as FIG. 8." '924 Patent, col.2 l.25-29, fig.8, Dkt. 51-1. Taken in context, it is clear that in order for Claim 1(e) to function, the top must physically connect with the flap.

The Court rejects Belkin's proposed construction because it is redundant. *See Phillips*, 415 F.3d at 1314. Claim 1(e), with Belkin's construction of the disputed phrase, would read: "a hinge integral with said top that permits said top to be partially opened to an angle of about 90º relative to the remainder of said top and <u>to use the flap to capture the outside of the top when the top is folded back on itself at a 90 degree angle</u>." This repetition also renders Claim 1(e) virtually nonsensical. This is reason enough to reject Belkin's construction. See *MEMS Tech.*, 447 F. App'x at 151 (rejecting a redundant construction of disputed terms); *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical 'cannot be correct.'" (quoting *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1357 (Fed. Cir. 2006)).

Moreover, the Court finds insufficient support for reading one preferred embodiment from the specification into the text of the '924 Patent. Belkin's construction is a paraphrase of a portion of the specification. *See* '924 Patent, c.2 l.25-29, Dkt. 51-1. Because Belkin provides that "to engage said flap" means "[t]o use the flap to capture the outside edge of the top when the top is folded back on itself at a 90 degree angle," the proposed definition is a narrowing construction

of the phrase "to engage said flap" because it can only occur when one specific scenario is satisfied. The '924 Patent specification, however, does not disavow interpretations that do not squarely fall within Belkin's construction; therefore, the Court cannot rely on this selected portion of the specification as a disclaimer of the scope of the '924 Patent. *See Thorner*, 669 F.3d at 1366-67; *see Amhil*, 81 F.3d at 1559. Belkin's interpretation is an improper attempt to read a preferred embodiment into the claims. *See Phillips*, 415 F.3d at 1316.

## B.  Indefiniteness

Belkin argues for the first time in its opening claim construction brief that the phrase "X-shaped configuration" in Claim 1(c) fails to satisfy the requirements of 35 U.S.C. § 112(b) and is indefinite.[2] Def.'s Am. Br., Dkt. 63 at 21. Belkin contends that "one skilled in the art would [not] understand the bounds of the claim when read in light of the specification," and thus the patent claim is invalid as indefinite. *See Exxon Research*, 265 F.3d at 1375. The substance of Belkin's argument is that Claim 1(c) discloses: "the four legs of said four-legged frame oriented in an X-shaped configuration relative to each other." '924 Patent, Dkt. 51-1. The specification, Belkin argues, does not disclose an "X-shaped configuration," but instead, an "O-shaped frame." '924 Patent, col.2 l.4-6. Belkin's conclusion is that "X" and "O" are not essentially the same, and finding so would frustrate the purpose of the definiteness standard by failing adequately to notify the public of the patentee's right to exclude.

---

[2] Although Cyber did not have the benefit of addressing Belkin's indefiniteness argument in Cyber's opening brief, Cyber provided a thorough response brief and oral argument to the Court. The Court also granted the parties an opportunity to submit supplemental responsive briefing before the *Markman* hearing. Dkt. 67. Because there is an insufficient showing by Cyber of unfair prejudice, the Court declines to exclude Belkin's indefiniteness challenge under Federal Rule of Civil Procedure 16.

Cyber responds that Belkin's indefiniteness arguments lack merit because the "X-shaped configuration" phrase is not insolubly ambiguous. Under the standard from *Exxon Research*, Cyber contends that so long as "the meaning of the claim is discernible . . . [it is] sufficiently clear to avoid invalidity on indefiniteness grounds." 265 F.3d at 1371. Cyber explains that Claim 1(c) recites the *legs* of the frame as being in an X-shaped configuration. In contrast, the shape of the *frame* is not disclosed in the text of the '924 Patent claims, but is described in the specification as follows:

> A prominent feature of cover 1 is a generally rectangular *O-shaped frame* 20 on the inside of the bottom 10b that provides structural support. Frame 20 is provided with four legs 22 integral with frame 20 to the four corners of bottom 10b. Legs 22 terminate in four resilient lugs 24 adapted to capture the four corners of electronic device P and hold the same securely in place against the bottom 10b.

'924 Patent, col.2 l.4-11, Dkt. 51-1 (emphasis added).

The Court returns to the general principles of claim construction. *Praxair*, 543 F.3d at 1319. The claims of the '924 Patent are afforded a statutory presumption of validity. *See* 35 U.S.C. § 282. Overcoming this presumption of validity "requires that any facts supporting a holding of invalidity be proved by clear and convincing evidence." *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). In light of the plain text of Claim 1(c), it is readily apparent that the phrase "X-shaped configuration" describes the orientation of "the *four legs* of said four-legged frame," whereas the reference to an "O-shaped frame" references the *frame* to which the *four legs* are attached. 924 Patent, Claim 1(c), c.2 l.4-5, Dkt. 51-1 (emphasis added).

Belkin alleges that the '924 Patent specification creates insoluble ambiguity, yet there is no direct conflict in describing the shape of the frame generally in the '924 Patent specification and then claiming a very specific orientation of the four legs of the four-legged frame in

Claim 1(c) of the '924 Patent. Moreover, Belkin has not provided the Court with expert evidence, although such evidence is not *per se* required, demonstrating that a person of ordinary skill in the art would conclude that the phrase "X-shaped configuration" is insolubly ambiguous. *See Elcommerce.com, Inc. v. SAP AG*, --- F.3d ---, 2014 WL 685622, at *14 (Fed. Cir. Feb. 24, 2014). Belkin's arguments before the Court are insufficient to overcome the straightforward reading of the '924 Patent claims and specification described above.

The parties both reference the patent prosecution history for support of their respective positions. On April 12, 2012, the Examiner issued a Final Office Action rejecting Claims 1 through 6 as obvious under 35 U.S.C. § 103(a) in light of Patterson and other prior art. Pl.'s Ex. 12, Dkt. 51-12 at 3-6. In relevant part, the Examiner rejected that the X-shaped configuration was a patentable limitation, finding that it was disclosed by Patterson and "there is no novelty in an X-shaped [*sic*] frame." *Id.* at 5. In Cyber's appeal of that rejection, Cyber maintained its argument that Patterson did not disclose a four-legged frame, and instead, only disclosed "four corners of [a] rotatable attachment mechanism." Pl.'s Ex. 14, Dkt. 51-14 at 4. Shortly after that exchange, Cyber and the Examiner agreed to issue the '924 Patent if Claims 5 and 6 were added to Claim 1.

This exchange bolsters the notion that using the phrase "X-shaped configuration" to describe the configuration of the "four legs of the four-legged frame" is readily comprehensible. Cyber's argument during the prosecution of the '924 Patent was that the Patterson *frame* did not disclose legs in an X-shaped configuration. The Examiner relied on a figure from the Patterson disclosure and noted that the circled portions of the Patterson frame (6) "can also be considered as being in an X-shape since it has projected corners as in the applicant's frame." Pl.'s Ex. 12, Dkt. 51-12 at 3-4. Giving Claim 1 of the '924 Patent the "broadest reasonable interpretation," *see*

*MPEP* § 2111, the Examiner's position was that a four-legged frame was obvious in light of the Patterson prior art and thus not patentable. This exchange does not demonstrate that Claim 1(c) of the '924 Patent is not readily understandable.

The only indefiniteness rejection in the '924 Patent prosecution history reveals that the Examiner rejected Claims 3 through 6 because it was unclear how the elastic straps were secured to the corners of the top and bottom of the protective cover. Pl.'s Ex. 10, Dkt. 51-10 at 3-4. After this indefiniteness challenge, Cyber modified Claim 3 to clarify that the elastic straps were "secured to the corners of said top." Pl.'s Ex. 11, Dkt. 51-11 at 1-2.

Belkin also contends that the prosecution history of the '924 Patent demonstrates that Cyber abandoned a claim to an "O-shaped" frame in favor of an "X-shaped" frame. Because of this, Belkin argues, prosecution history estoppel prevents Cyber from arguing that a range of equivalents to an X-shaped configuration might be infringing products. Yet, Belkin's argument conflates the leg and frame structures, which as explained above, are separately identified in the '924 Patent. In sum, the Court finds that Belkin's indefiniteness challenge to the '924 Patent is without merit.

As a final matter, Belkin appears also to be raising a written description challenge under 35 U.S.C. § 112(a). Belkin's arguments wander between, and arguably conflate, a challenge under 35 U.S.C. § 112(b) (indefiniteness) and a challenge under 35 U.S.C. § 112(a) (written description) without clearly delineating these two distinct issues. The Court declines at this time to address Belkin's written description challenge under 35 U.S.C. § 112(a) because such an inquiry is inappropriate at this stage of the litigation when a court must first construe any disputed claims in order to "ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described

in the patent specification." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). Further, a written description challenge is generally "a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). We are not yet at the stage of summary judgment, and no such motion is pending. The Court, therefore, declines to address the written description requirement at this time.

## CONCLUSION

The disputed terms "top" and "bottom" are given their plain and ordinary meanings. The Court construes the disputed term "flap" to mean "a flat piece of material that has at least one side attached to the portfolio." The Court construes the disputed term "to engage said flap" to mean "to physically connect the top with the flap." The phrase "X-shaped configuration" in Claim 1(c) is not invalid as indefinite or in violation of 35 U.S.C. § 112(b). Finally, the Court declines to address Belkin's "written description" challenge under 35 U.S.C. § 112(a) at this time and will wait to see whether that issue is raised either pretrial in a motion for summary judgment or at trial in a motion for judgment as a matter of law.

IT IS SO ORDERED.

DATED this 24th day of March, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge